IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASVHILLE DIVISION

ANGELA CELA,                              )
                                          )
          Plaintiff,                      )          NO.  3:09-cv-00173
                                          )          JUDGE HAYNES
v.                                        )
                                          )
TENNESSEE STATE UNIVERSITY,               )
*et al.*,                                 )
                                          )
          Defendants.                     )

## M E M O R A N D U M

Plaintiff, Angela Cela, filed this action individually and on behalf of all others similarly

situated, under Title VI of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000d et seq.,

and 42 U.S.C. § 1983 against Defendants: Tennessee State University ("TSU"); Dr. Iris Johnson-

Arnold; Dr. Tina Smith; and Dr. Harold R. Mitchell.  Plaintiff asserts claims of racially

discriminatory funding of grants in TSU's "Base-TN Recruitment and Retention" program in the

Department of Speech Pathology and Audiology of TSU.  Plaintiff seeks to represent a class of

all non African-American students enrolled or who attempted to enroll in this graduate program

since 2002 and were denied the opportunity to receive funding under the BASE-TN Recruitment

and Retention Grant on account of their race.

Before the Court are Plaintiff's motion to compel discovery (Docket Entry No. 39) and

motion for class certification (Docket Entry No. 44).  These motions are related in that Plaintiff's

motion to compel seeks information limited from disclosure by federal law, but the Defendants

provided all directory information or current enrollee and non-identifying information for all

students in the grant program at issue from 2002 to 2009, including the race of students receiving

1

the grants from the grant program at issue. The Court addresses the motion to certify the class first.

## A.     Analysis of the Motion to Certify

### 1.     Plaintiff's Grant Request

In August 2007, Plaintiff was graduated summa cum laude as an undergraduate student at TSU. (Docket Entry No. 46-1, Cela Affidavit at 1). Prior to her graduation, Plaintiff met with other students who were interested in TSU's Department of Speech Pathology and Audiology ("DOSPA") graduate program at TSU. Id. At this meeting, Defendant Johnson-Arnold, an assistant professor in DOSPA, allegedly instructed the students to send a letter requesting admission into the program and that only one grant opportunity was available to non-African-Americans. Id.

In April 2007, Plaintiff submitted her letter for admission and financial aid for TSU's graduate program and her application for admission was accepted. In October 2007, Plaintiff inquired about her financial assistance request and allegedly was told more time was needed for approval. After an October 2007 department staff meeting, Plaintiff states that she received conflicting reports on whether she would receive a grant award, but ultimately she did not receive a grant.

On February 16, 2008, Defendant Mitchell requested to meet with Plaintiff at his office on February 19, 2008. At this meeting, Plaintiff states that she told Mitchell that she felt betrayed when she did not receive a grant award. According to Plaintiff, Defendant Mitchell explained that only six or seven grants were funded, but allegedly told Plaintiff that she did not qualify for the BASE-TN Grant because she was not African American. Defendant Mitchell allegedly stated that African-Americans were underrepresented in the field of speech language

pathologists. Plaintiff responded that as a Pacific Islander, her ethnic group comprises less than one per cent (1%) of speech language pathologists. According to Plaintiff, Defendant Mitchell responded that if the administration had known her race, she would have received that grant and allegedly stated: "Well, what do you expect? You are at a Historically Black University. You have to know the backdrop and understand our professors' point of view when they converse with white students." (Docket Entry No. 46-1, Cela Affidavit at 3). When Plaintiff responded that Defendant Mitchell was engaged in reverse discrimination, Defendant Mitchell allegedly stated "Come on Angela, you know that when people look at you they think you are white." Id.

## 2. The "Base-TN Recruitment and Retention"

Since 2002, DOSPA has administered the BASE-TN Recruitment and Retention Grant that is funded by the United States, but originates from the Tennessee Department of Education ("TDOE"). "The purpose of the program is to help professional personnel meet licensure requirements in the area of Special Education." (Docket Entry No. 46 at Exhibit H). According to the 2002 grant proposal, the program's purpose is also "to recruit, train and retain 12 minority students (both bachelor and graduate level) in the area of speech-language pathology as they pursue a master's degree." Id. at Exhibit I. The BASE-TN program's funding includes a "distance learning grant" for students who take classes remotely and a "recruitment and retention grant" for students who would take their classes on TSU's campus. Id. Plaintiff's claims involve the latter class of "on-campus" grants.

TDOE sets the eligibility requirements for these grants, namely, that an applicant must be a Tennessee resident with a "B" average, without a prior license as a special education teacher and to agree upon award of the graduate degree to work two (2) years as a special education teacher for each year of grant funding. Id. at Exhibit H. A grant applicant also cannot be the

3

recipient of other financial assistance. This grant program ended prior to the 2008-2009 school year. (Docket Entry No. 49-1 at 5).

For the time at issue, the Defendant Mitchell was the department head and the principal administrator for the on campus grant program. Defendant Smith, an associate professor of speech pathology is the interim departmental chair. Defendant Johnson-Arnold is an assistant professor in the department. Dr. Harris is TDOE's director of the BASE-TN Initiative, (Docket Entry No. 46-6, Harris deposition at 10-11), but the individual Defendants recruited students for the department and collectively administer the grant. (Docket Entry No. 46-2, Mitchell at 35-37, 490-50 and Docket Entry No. 46-3, Smith Deposition at 46, 49-50). Defendants Mitchell, Smith and/or Johnson-Arnold must approve a student's application for a grant and Smith prepares the "final reports" and resubmission authority for grant documents to the Tennessee Department of Education ("TDOE"). (Docket Entry No. 46-3, Smith Deposition at 52, 58).

Dr. Harris discussed the minority student language in the grant with TSU officials and requested this language be eliminated. (Docket Entry No. 46-6, Harris Deposition at 56). This language was in the grant proposals and final reports sent to TDOE. This language was also included in the "Announcement and Application," flyers and "Scope of Services" section of this grant contract with the TDOE. According to TSU's internal investigation of Plaintiff complaints, the flyer was "generated for a conference held in 2006-2007." (Docket Entry No. 46-7, Exhibit G at 8). Yet, on February 27, 2008, McEnerney directed that this language in recruiting materials be eliminated. Id. at Exhibit P. In May 2008, Dean Kathleen McEnerney sought confirmation of whether the grant was limited to only African-Africans or ethnic minorities. (Docket Entry No. 46-17).

### 3.     Plaintiff's Grievances

On February 25, 2008, Plaintiff filed an administrative complaint of racial discrimination with TSU's Equity, Diversity and Compliance Office. Plaintiff's administrative complaint alleged that she was removed from class by Defendant Johnson-Arnold to justify retroactively the denial of her BASE-TN grant request. Plaintiff then filed a second administrative complaint with TSU's Equity Diversity and Compliance Office alleging retaliation on March 1, 2008 arising from Plaintiff's failure to pass the subjective part of the examination, becoming ineligible to graduate. Defendant Johnson-Arnold graded this examination. Plaintiff alleges that the adverse grading was retaliation for her complaints about the grant program and notes that in the past, African-American students who failed the subjective part of the final examination were allowed to graduate. In any event, Plaintiff was graduated.

On or about April 7, 2008, Plaintiff met with TSU Provost Hampton who advised Plaintiff that retaliatory behavior was not condoned by TSU. Hampton did not issue a written finding on Plaintiff's complaints. On April 15, 2008, Plaintiff had a second meeting with Hampton, Dean McEnerney and approximately twelve (12) other non-African-American students who complained of racial discrimination in the Department of Speech Pathology and Audiology and Defendant Mitchell's conduct with female students in the Department.

On December 4, 2008, Sandra Keith of TSU's Office of Equity, Diversity and Compliance issued a memorandum finding that TSU's Department of Speech Pathology and Audiology did not violate policies regarding racial discrimination and harassment. Keith's memorandum also instructed TSU personnel not to engage in retaliation. Keith's memorandum noted that Plaintiff is a Kentucky residence and cited Plaintiff's statement to Defendant Johnson-Arnold that she did not intend to live in Tennessee after graduation. Plaintiff denies these latter

statements. In her affidavit, Plaintiff does not address the Defendants' assertion that she is a Kentucky citizen who commuted to TSU from Kentucky. Plaintiff notes that Defendant Johnson-Arnold stated that other students were not Tennessee citizens, but received a grant from this program after the student(s) were declared "an in-state student." Id. at 189. (Docket Entry No. 46-4, Johnson-Arnold Deposition at 183-186).

### B. Conclusions of Law

Under Title VI, "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. For her claims, Plaintiff also cites the "Geier Consent Decree." Geier v. Sundquist, 128 F. Supp. 2d 519 (M.D. Tenn. 2001), in which TSU "reaffirmed its non-discrimination polic[y] in all aspects of university and college life, including financial aid, extracurricular activities, hiring and retention of employees, and recruitment and enrollment of students." Id. at 547.

The Sixth Circuit requires that district court to engage in a "rigorous analysis" of whether the Rule 23 prerequisites are met before certifying a class. In re Am. Med. Sys., Inc., 75 F.3d 1069, 1078 (6th Cir. 1996) (citing General Tel. Co. v. Falcon, 457 U.S. 147, 161 (1982)). The district court has broad discretion in deciding to certify a class within the Rule 23 framework. Id. (citation omitted). Yet, in appropriate instances, "it may be necessary to probe behind the pleadings before coming to rest on the certification question." General Tel., 457 U.S. at 160, but determination of the merits is disfavored. Eisen v. Carlisle & Jacqueline, 417 U.S. 156, 177-7 (1974). The Court first addresses the Plaintiff's compliance with Rule 23(a).

## 1. Rule 23(a) Prerequisites

Rule 23(a) sets forth four prerequisites that Plaintiff must initially satisfy to maintain this action as a class action, namely: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

### a. Numerosity

The first requirement of class certification under Rule 23(a) is that the putative class "is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a).

> There is no strict numerical test for determining impracticability of joinder. Senter, 532 F.2d at 523 n. 24 (and citations therein). Rather, "[t]he numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." General Tel. Co. v. EEOC, 446 U.S. 318, 330, 100 S.Ct. 1698, 1706, 64 L.Ed.2d 319 (1980). When class size reaches substantial proportions, however, the impracticability requirement is usually satisfied by the numbers alone. 1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions, § 3.01, at 3-4 (3d ed. 1992).

In re Am. Med. Sys., Inc., 75 F.3d at 1079.

The Defendants contend that with the applicable one year statutes of limitations,[1] the class claims would be limited to those grant applicants as of February 18, 2008. This grant program ended in 2008. In addition, the class would be further limited to those graduate students who met the grant eligibility requirements, such as a B average, a current teacher's license non-

---

[1] Section 1983 and Title VI claims are governed by Tennessee's one year statute of limitations. See Simmons v. Middle Tennessee State University, 117 F.3d 1421, 1997 WL 400105 (6th Cir. 1997). This action was filed on February 18, 2009. (Docket Entry No. 1, Complaint). The effect of the statute of limitations on the class certification is a relevant consideration on the issue of class certification. See Fisher v. Dallas Federal Sav. And Loan Ass'n, 106 F.R.D. 465, 470-71 (N.D. Texas 1985).

recipient of other forms of financial aid at the time of the grant awards and commitment to teach special education in Tennessee. In 2008 there were 6-7 "on-campus" grants and 12 non-white students interested in TSU's DOSDA's special education post-graduate program.

In the Sixth Circuit, "there is not automatic cut-off point" for "the number of plaintiffs [that] makes joinder impractical." Bason v. Honda of American, Mfg., 370 F.3d 565, 570 (6th Cir. 2004), but "several hundred" of potential class members would satisfy Rule 23(a) (1). Id. According to Moore's treatise, courts find that proposed classes of 40 or more persons satisfy the numerosity requirement, but classes consisting of 25 or fewer class members do not. Vol. 5 Moore's Federal Practice at § 23.22 at nns. 6-8. The facts here allegedly involve 6 or 7 grants and 12 non-African American students who may have been adversely affected. Since all members of this group are "on-campus" TSU students and Tennessee residents, there does not appear to be any issue of geographic dispersion of eligible class members in this action. In any event, the Court concludes that this number of putative class members does not satisfy the numerosity requirement of Rule 23(a) that alone can be grounds for denying class certification. Moore's at § 23.22.

### b. Commonality

The second requirement of Rule 23(a) is that Plaintiff must demonstrate "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "The commonality requirement is interdependent with the impracticability of joinder requirement, and the 'tests together form the underlying conceptual basis supporting class actions.'" In re Am. Med. Sys., Inc., 75 F.3d at 1080 (quoting 1 Newberg, supra at § 3.10, at 3-47).

> The class-action was designed as "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." Class relief "is 'peculiarly appropriate' when the 'issues involved are common to the class as a

whole' and when they turn on questions of law applicable in the same manner to each member of the class."

Id.

The commonality test requires only a single issue common to all class members. 1 Newberg supra at § 3.10. A class meets the commonality requirement even if questions peculiar to individual class members remain after a determination of defendant's liability. Sterling v. Velsicol Chem. Corp., 855 F.2d 1188, 1197 (6th Cir. 1988).

> The commonality requirement deals with shared questions of law or fact. Although Rule 23(a) (2) speaks of "questions" in the plural, we have said that there need only be one question common to the class. American Med. Sys., 75 F.3d at 1080. It is not every common question that will suffice, however; at a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality. What we are looking for is a common issue the resolution of which will advance the litigation.

Sprague v. General Motors Corp., 133 F.3d 388, 397 (6th Cir. 1998). "[W]here the nature of the legal claims are such that individuals would have to submit separate proofs to establish liability, class actions are disapproved due to lack of commonality." Saur v. Snappy Apple, 203 F.R.D. 281, 287 (W.D. Mich. 2001).

Here, a factual dispute exists on whether Plaintiff is a Tennessee citizen or a Kentucky resident who commuted to TSU. Another dispute is whether Plaintiff is even eligible for this grant program that requires a two years commitment for each year of the grant award. The residency and grant requirements to teach in Tennessee as well as the B average would require individual determinations for each putative class member. With competing students and a limited number of grants, detailed factual and individualized findings would be necessary to decide which applicant is qualified for a grant. In such a limited setting with six or seven scholarships, such individual determinations could also create conflicts among class members.

The limited number of students and grants do not lend this type of claim to class analysis. The Court concludes that Plaintiff's claim does not satisfy the commonality requirements.

### c. Typicality

Rule 23(a)(3) requires that "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). In the Sixth Circuit, to satisfy typicality, the plaintiff "must be a member of the class he claims to represent . . . [or s]tated another way, the plaintiff must have standing to represent the class." Reid v. White Motor Corp., 886 F.2d 1462, 1471 (6th Cir. 1989).

Typicality limits the class claims to those fairly encompassed by the named Plaintiff's claims. General Tel. Co. v. EEOC, 446 U.S. 318, 330 (1980). See also Senter, 532 F.2d at 525 n. 31 ("[t]o be typical, a representative's claim need not always involve the same facts or law, provided there is a common element of fact or law"). A necessary consequence of the typicality requirement is that the representative's interests must align with those of the represented group, and in pursuing his own claims, the named plaintiff will advance the interests of the class members. 1 Newberg, supra, § 3.13, at 3-75. In In re Am. Med. Sys., the Sixth Circuit stated:

> Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct. In other words, when such a relationship is shown, a plaintiff's injury arises from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff. Thus, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.

75 F.3d at 1082 (quoting 1 Newberg, supra, § 3-13, at 3-76 (emphasis added and footnote omitted)). Further,

> [t]he typicality requirement, so explained, tends to merge with the commonality requirement. Falcon, 457 U.S. at 158 n. 13. Nevertheless, it is a separate inquiry and in particular focuses attention on differences between class representative

> claims and class claims which would defeat the representative nature of the class
> action. Fuller v. Fruehauf Trailer Corp., 168 F.R.D. 588, 598 (E.D. Mich. 1996).

Saur, 203 F.R.D. at 288 (emphasis added).

In the Sixth Circuit, the test for typicality is whether a named plaintiff's claims "arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." In re Am. Med. Sys., 75 F.3d at 1082 (emphasis added). As to the typicality factor, with Plaintiff's questioned eligibility for a grant, based on her status is citizenship of another state and her disputed statements about her lack of interest to remain in Tennessee to teach, serious questions arise over whether Plaintiff's claim is typical. In her affidavit, Plaintiff does not address whether she was at the time a Kentucky citizen. Thus, the Court concludes that Plaintiff's claim would not be typical of putative class members who are Tennessee citizens and who intend to remain in Tennessee to teach special education.

### d. Adequacy

Rule 23(a) also demands that the named representatives "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

> This prerequisite is essential to due process, because a final judgment in a class action is binding on all class members. Hansberry v. Lee, 311 U.S. 32 (1940); 1 Newberg, § 3.21, at 408. See also Smith v. Babcock, 19 F.3d 257, 264 n. 13 (6th Cir. 1994) ("[n]o class should be certified where the interests of the members are antagonistic, because the preclusive effect of the verdict may deprive unnamed class members of their right to be heard").

Trollinger v. Tyson Foods, Inc., 4:02-CV-23, 2006 U.S. Dist. Lexis 74114 at *22-23 (E.D. Tenn. Oct. 10, 2006).

Inquiry into the adequacy elements requires the Court to consider whether "1) the representative[s] [have] common interests with unnamed members of the class, and 2) it []

appear[s] that the representatives will vigorously prosecute the interests of the class through qualified counsel." In re Am. Med. Sys, Inc., 75 F.3d at 21 (quoting Senter v. General Motors Corp., 532 F.2d 511, 525 (6th Cir. 1976)) (Rule 23(a)(4) tests "the experience and ability of counsel for the plaintiffs and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent"); Falcon, 457 U.S. at 157 n. 13 ("adequacy of representation requirement . . . also raises concerns about the competency of class counsel and conflicts of interest")). In Falcon, the Supreme Court reiterated its core requirement that "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." 457 U.S. at 156 (citations and quotation omitted). Absolute identity of claims among class members, however, is not required, Like v. Carter, 448 F.2d 798, 802 (8th Cir. 1971), particularly as to the amount of damages. Weathers v. Peters Realty Corp., 499 F.2d 1197, 1200-01 (6th Cir. 1974). The adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentives to pursue the claims of the other class members. Id. at 157 n. 13.

As noted above, the second Senter criterion requires the Court to determine that Plaintiff's counsel will "vigorously prosecute the interests of the class." In fact, the Sixth Circuit "explained that it 'reviews the adequacy of class representation to determine whether class counsel are qualified, experienced and generally able to conduct the litigation, and to consider whether the class members have interests that are not antagonistic to one another.'" Beattie v. CenturyTel, Inc.,511 F.3d 554, 562-63 (6th Cir. 2007) (quoting Stout v. J.D. Byder, 228 F.3d 709, 717 (6th Cir. 2000)). Given the experience of Plaintiff's counsel, the Court concludes that Plaintiff satisfies this requirement.

Thus, Plaintiff has not satisfied three of the threshold requirements for class certification: numerosity, typicality and commonality.

Accordingly, the Court concludes that Plaintiff's motion for class certification should be denied. In any event, without class certification, if Plaintiff is successful on her claims, the ruling will provide declaratory relief to all similarly situated persons in the program. Craft v. Memphis Light Gas & Water Div., 534 F.2d 664, 686 (6th Cir. 1976) aff'd on other grounds 436 U.S. 1 (1978).

With this conclusion, the Court deems Plaintiff's motion to compel discovery of other class members' financial records to be moot.

An appropriate Order is filed herewith.

**ENTERED** this the _____ day of February, 2011.

WILLIAM J. HAYNES, JR.
United States District Judge